UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LEONARD BROWN                                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:17-CV-50-DPJ-FKB

JIM HOOD, ATTORNEY GENERAL OF THE
STATE OF MISSISSIPPI, ET AL.                                                            DEFENDANTS

ORDER

Plaintiff Leonard Brown brings this suit under state law and 42 U.S.C. § 1983 for an alleged sexual assault and related offenses he suffered while incarcerated. The case is before the Court on two motions. First, Defendants Marshall Turner and Jacquelyn Banks, in their official and individual capacities, filed a Motion to Dismiss Based on Eleventh Amendment Immunity, State Law Immunity[,] and Qualified Immunity [20]. That motion is denied without prejudice as to the retaliation claims but is otherwise granted. Second, Defendant Jim Hood, Attorney General of the State of Mississippi, filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction [18]. His motion is granted.

I.  Background

Brown, a post-conviction state inmate, says that "Officer Lucker" sexually assaulted him on July 24, 2015, while Brown was housed at the South Mississippi Correctional Institute ("SMCI"). After that, Defendants allegedly denied Brown's requests for medical care and then retaliated against Brown for complaining about the way he had been treated.

Brown filed this lawsuit against Hood, Turner, Banks, and others on January 23, 2017. In it, he asserts § 1983 claims for violation of his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution as well as state-law tort claims. Brown also seeks equitable relief, including a declaration that Defendants violated his rights and

an injunction prohibiting future enforcement of the inmate exception to the Mississippi Tort Claims Act ("MTCA"). Miss. Code Ann. § 11-46-9(1)(m). Hood, Turner, and Banks moved to dismiss the claims against them, and the issues they raised have been fully briefed.

II. Standards

   A. Rule 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) "challenge[s] the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject-matter jurisdiction may be found based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "[T]he party asserting jurisdiction"—here, the plaintiff—"bears the burden of proof that jurisdiction does in fact exist." *Id.*

   B. Rule 12(b)(6)

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

2

the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

III. Analysis

A. Turner and Banks

Turner and Banks seek dismissal on three grounds. They say that the Eleventh Amendment bars claims asserted against them in their official capacities; the inmate exception of the MTCA bars all state-law claims; and qualified immunity precludes the federal claims against them in their individual capacities. The Court will address each argument in turn.

1. Eleventh Amendment

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the amendment "to bar citizens from suing their own states as well as other states." *United States v. Tex. Tech Univ.*, 171 F.3d 279, 289 (5th Cir. 1999). Claims against officials in their official capacities are "treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). So the Eleventh Amendment bars the official-capacity claims against Turner and Banks. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

There is, however, an exception to sovereign immunity first recognized in *Ex parte Young*. 209 U.S. 123 (1908). That exception allows a plaintiff to sue a state official in his or her official capacity for prospective relief from an ongoing violation of federal law. *See Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Ex parte Young*, 209 U.S. 123).

Brown says the *Ex parte Young* exception applies here because "[a]s long as he is incarcerated at SMCI and the officers who threatened him are present, there is a continuing likelihood that he will request reassignment to another prison or seek a remedy which he alleges will be denied by the defendants who will retaliate against him." Pl.'s Mem. [29] at 11–12. This argument would not save Brown's claims for monetary damages based on past violations, so those claims are dismissed as to Turner and Banks in their official capacities.

Turning to prospective relief for ongoing federal offenses, Turner and Banks correctly observe that Brown's Complaint alleges only violations that occurred in the past and "fails to allege that the violations are ongoing." Defs.' Reply [33] at 3. Indeed the only declaratory relief Brown seeks in his Complaint is a judgment declaring that Defendants' past acts "violated" his rights. *See* Compl. [1] at 18−19. This form of declaratory relief, and the alleged past violations of federal law Brown asserts, are not what *Ex parte Young* addresses. *See Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . .").

That leaves Brown's prayer for an injunction precluding the state from enforcing the MTCA's inmate exception. *See* Compl. [1] at 19. But to assert that claim against Turner and Banks in their official capacities, Brown must show that they "have some enforcement connection with the challenged statute." *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001). And Brown must further show that Turner and Banks have "demonstrated [a] willingness . . . to enforce the statute." *Id.* at 417.

On this issue, Brown offers nothing more than the conclusory allegation that Turner and Banks "act in concert with the Mississippi Attorney General in enforcing the MTCA." Pl.'s

4

Mem. [29] at 13. But Turner and Banks are both prison officials working within the Mississippi Department of Corrections; they do not enforce the MTCA's inmate exception. The Eleventh Amendment bars all official-capacity claims against Turner and Banks.

2. State-Law Claims

Turner and Banks say they are immune from suit for alleged violations of state law under the MTCA's inmate exception, which provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> [] Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed[.]

Miss. Code Ann. § 11-46-9(1)(m).

On its face, the statute provides Turner and Banks immunity from Brown's state-law claims against them. But Brown says that the Court should refuse to enforce the inmate exception as it "violates [his] federal and state due process rights." Pl.'s Mem. [29] at 13–14. In his Complaint, he also argues that the inmate exception violates the remedy clause of the Mississippi Constitution as well as the federal Equal Protection Clause. Compl. [1] ¶ 79.[1]

---

[1] Citing a case involving a takings claim and one involving only federal substantive claims, Brown also argues that the inmate exception is unconstitutional because it "does not provide a procedure [under state law] for compensation of inmate victims of sexual assault." Pl.'s Mem. [29] at 13 (citing *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790 (8th Cir. 1998) (upholding jury verdict against officer in his individual capacity on § 1983 claims for federal due process violation where officer sexually assaulted plaintiff); *Fountain v. Metro. Atlanta Rapid Transit Auth.*, 678 F.2d 1038, 1042 (11th Cir. 1982) ("Whatever rights appellant may have under state law, it is obvious that the federal Constitution protects him from official takings of property for public use without just compensation.")). Neither case supports Brown's argument that the MTCA's inmate exception is unconstitutional.

Starting with the remedy clause of the Mississippi Constitution, it provides: "All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Miss. Const. art. 3, § 24. Significantly, the Mississippi Supreme Court "has held that the remedy clause does not conflict with sovereign immunity." *Wallace v. Town of Raliegh*, 815 So. 2d 1203, 1206 (Miss. 2002) (citation omitted).

The Fifth Circuit addressed the interplay between the MTCA and the remedy clause in *Grimes v. Pearl River Valley Water Supply District*, where the plaintiffs argued that another portion of the MTCA exempting the defendant from liability "prevent[ed] them from prosecuting their claims" against that defendant. 930 F.2d 441, 444 (5th Cir. 1991). The court held that "the state is free from any liabilities unless it carves an exception." *Id.* at 443. And when "[t]he Mississippi Legislature has carved no such exception for [a particular] type of suit," the remedy clause "does not require them to do so." *Id.* For these reasons, the inmate exception to the MTCA's waiver of sovereign immunity does not violate the remedy clause.

Turning to Brown's due-process argument, he can prevail only if he "first identif[ies] a life, liberty, or property interest protected by the Fourteenth Amendment and then identif[ies] a state action that result[s] in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). Brown suggests that he has a property interest in suing Turner and Banks. *See* Pl.'s Mem. [29] at 14. But *Grimes* again forecloses the argument. As the court noted, "[p]roperty interests are created and defined by state law," and where the MTCA does not allow suit against the defendant, there is no property interest. *Grimes*, 930 F.2d at 444; *see also Wallace*, 815 So. 2d at 1206–07 ("Because the right to sue the State has been withheld through the statutes by the Legislature, there is no property right to sue the State or other governmental

6

entities and, therefore, no due process violation of the Mississippi [or United States] Constitution."). The *Grimes* court further found that "even if there were a protected property interest, plaintiffs were not deprived the process that was due them" because "[t]hey had plenty of opportunity to contest the sovereign immunity scheme during the legislative process. The legislature provided all the process that was due." 930 F.2d at 444. Brown has no protected property interest in his ability to sue Turner and Banks. As such, his due-process challenge to the inmate exception fails.

Brown next claims that the inmate exception "treat[s] inmates differently from citizens who are not inmates regarding the allowance and payment of tort claims against state actors." Compl. [1] ¶ 87. He further asserts that this results in "discrimination against minority" individuals, because "an overwhelming majority of [inmates] are minorities." *Id.* ¶ 88. Neither side examines this issue in any depth, but the Supreme Court applies strict scrutiny to "all racial classifications imposed by government." *Johnson v. California*, 543 U.S. 499, 505 (2005) (alteration, citation, and internal quotation marks omitted). "[I]f a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *see also Veasey v. Abbott*, 830 F.3d 216, 230–31 (5th Cir. 2016).

The inmate exception is racially neutral on its face, and Brown does not address any of the factors relevant to the intent question. *See Veasey*, 830 F.3d at 231. Absent a showing of discriminatory purpose, the inmate exception survives the equal-protection challenge if it is rationally related to a legitimate government purpose. *See Vance v. Bradley*, 440 U.S. 93, 97 (1979). It is. *See White v. Wexford Health Sources, Inc.*, No. 2:09-CV-161-GHD, 2012 WL

7

3000645, at *4–5 (N.D. Miss. July 23, 2012); *Wallace*, 815 So. 2d at 1207 ("The Legislature had a legitimate purpose in protecting governmental entities from claims brought by inmates . . . .").

In sum, Brown has not demonstrated that the MTCA's inmate exception is unconstitutional. His state-law claims against Turner and Banks are therefore barred.

### 3. Qualified Immunity

Finally, Turner and Banks assert qualified immunity as to Brown's § 1983 claims against them in their individual capacities. As the Fifth Circuit recently summarized:

> [T]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. This immunity protects all but the plainly incompetent or those who knowingly violate the law. Accordingly, we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate. The basic steps of this court's qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

*Anderson v. Valdez*, 845 F.3d 580, 599–600 (5th Cir. 2016) (citation and quotation marks omitted, punctuation altered).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). And "[w]hen a defendant raises qualified immunity, the burden is on the plaintiff to 'demonstrate the inapplicability of the defense.'" *Coleman v. Marion Cty.*, No. 2:14-

8

CV-185-DPJ-FKB, 2015 WL 5098524, at *6 (S.D. Miss. Aug. 31, 2015) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

At the Rule 12(b)(6) stage, "to hold that the defendant violated the law at step one of the qualified-immunity analysis . . . is simply to say that the plaintiff has stated a claim upon which relief may be granted." *Morgan v. Swanson*, 659 F.3d 359, 384 (5th Cir. 2011); *accord Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." (internal quotation marks and citation omitted)). With this framework in mind, the Court addresses Brown's claims.

At the outset, the Court notes that over roughly 10 pages of their opening memorandum, Turner and Banks addressed the merits of each of Brown's claims in light of the qualified-immunity standards. Defs.' Mem. [21] at 8–18. Brown devoted less than two pages of his memorandum to the issue, and he did not discuss with any particularity the separate substantive claims Turner and Banks identified. Instead, he made the following generic arguments: "Inmates had a clearly established right in July[] 2015 to report sexual assaults by prison officials and to receive medical treatment for that abuse. An inmate has a constitutional right not to be retaliated against for reporting the sexual abuse by prison officials." Pl.'s Mem. [29] at 15–16 (citations omitted). Because Brown limited his response to those claims, the Court so limits its analysis and finds that the other claims against Turner and Banks have been waived.[2]

---

[2] The following claims identified by Turner and Banks were waived: (1) Fourth Amendment unlawful arrest claim; (2) claims related to the cold and uncomfortable cell; (3) failure to protect; (4) denial of ARP request; and (5) First Amendment.

9

a. Delay in Medical Care

After the sexual assault, Brown says Turner and others placed him in a holding cell for three-and-a-half days and refused his repeated requests for his prescribed daily medications and for medical treatment related to the sexual assault. Compl. [1] ¶¶ 35–37. Following his release from isolation, Brown received medical attention, *id.* ¶ 38, and he now asserts a claim for delayed medical care against Turner.

The Eighth Amendment "impos[es] a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

> A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain." The mere delay of medical care can also constitute an Eighth Amendment violation but only "if there has been deliberate indifference *that results in substantial harm.*"

*Id.* (emphasis added) (footnotes omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

Turner says Brown fails to allege that the "delay in receiving his medication or medical treatment resulted in 'substantial harm' or any harm at all." Defs.' Mem. [21] at 11–12. For his part, Brown ignores this argument and hardly addresses Turner's motion as to this claim. Looking at the Complaint itself, Brown alleges that "[a]s a proximate result" of all Defendants' actions, Brown "has suffered physical pain and injury." Compl. [1] ¶ 96. But those averments are too conclusory for the Court to consider. *Iqbal*, 556 U.S. at 678.

Put simply, Brown provides no facts in his Complaint explaining how the alleged delay—as opposed to the underlying sexual assault or any other alleged wrongdoing—caused substantial

harm. And he has otherwise failed to explain how he has met his burden of overcoming Turner's qualified-immunity defense. The delay-in-medical-care claim is therefore dismissed as to Turner.

b.  Retaliation

Brown says both Turner and Banks retaliated against him for complaining about the sexual assault and the lack of medical care. It is clearly established that "[f]iling grievances and otherwise complaining about the conduct of correctional officers through proper channels [as Brown says he did] are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (quoting *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009)) (internal quotation marks omitted).

"To establish retaliation, a prisoner must show '(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" *Joseph v. Dykes*, 368 F. App'x 511, 513 (5th Cir. 2010) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). Here, Defendants focus on causation and the related intent element. *See* Defs.' Mem. [21] at 23.

To demonstrate causation, the plaintiff must establish that but for the retaliatory motive, the complained-of incident would not have occurred. *McDonald*, 132 F.3d at 231. "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim. The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Jones v. Greninger*, 188 F.3d 322, 325 (internal quotation marks and citation omitted).

11

Defendants Turner and Banks say Brown fails this test because he offers nothing beyond conclusory assertions and subjective beliefs. But contrary to that argument, Brown sufficiently pleaded facts that the Court must assume are true and view in the light most favorable to him. *Martin K. Eby Constr. Co.*, 369 F.3d at 467. Those facts include the following:

- On July 24, 2015, Defendant Lucker forced Brown to strip, applied handcuffs, and then sexually assaulted Brown with an object by "inserting [it] into [his] body." Compl. [1] ¶ 25.

- Defendant Turner and others then placed Brown in a frigid holding cell wearing only his boxer shorts and for three and a half days denied his repeated requests for clothes, a blanket, a mat, his daily medications, and medical care for the sexual assault. *Id.* ¶¶ 28, 29, 31–37, 50.

- When released, Brown complained to a nurse about the lack of medical care and the sexual assault. *Id.* ¶ 39.

- After that complaint, Defendant Turner and others placed Brown in segregation. *Id.* ¶ 40.

- Brown then called the Prison Rape Elimination ("PRE") representative to report the rape using a wall telephone, and the representative came to the prison and took his statement. *Id.* ¶ 41.

- Only then was Brown taken to the hospital. *Id.* ¶ 43.

- Brown received an RVR for using the telephone to report the rape, *id.* ¶ 44, but there is nothing in the record suggesting that using the telephone for that reason was improper.

- Shortly after his complaints about the sexual assault and lack of medical care, officers moved Brown to Tower 5 "where high risk offenders who had committed murder in prison were housed and housed [Brown] in the cell with the high risk offenders." *Id.* ¶ 53.

- While in Tower 5, correctional offers would visit Brown and threaten to kill him. *Id.*; *see also id.* ¶ 60.

- Before August 21, 2015, Brown wrote Banks about the sexual assault and the unsafe housing assignment he faced and requested a transfer. *Id.* ¶ 52, 58.

- On August 21, 2015, Banks—with knowledge of Brown's complaints regarding the sexual assault—denied Brown's requested transfer from Tower 5. *Id.* ¶¶ 50, 62.

12

- On August 28, 2015, Defendant Turner—who allegedly placed Brown in the holding cell and denied his requests for clothes and medical treatment for the sexual assault—denied his challenge to the RVR and for administrative remedies. *Id.* ¶ 48.

This chronology suggests a series of events occurring in close proximity to Brown's complaints. Indeed some of the acts that seem retaliatory happened within hours or days of Brown's complaints, like placing him in segregation after he spoke with the nurse and then transferring him to Tower 5 after his call to the PRE representative. All of the events in this chronology occurred within a month of his release from the holding cell.

Viewed as a whole and in the light most favorable to Brown, this chronology—based on pleaded facts—is sufficient to plausibly infer retaliation. *See Butts*, 877 F.3d at 589 (reversing summary judgment and holding that placing inmate in segregation two hours after complaint "revealed evidence of a retaliatory motive and causation"); *Garner v. Moore*, 536 F. App'x 446, 450 (5th Cir. 2013) (holding that plaintiff "arguably" demonstrated "a chronology of events from which retaliation may be inferred" when adverse act occurred four days after complaint); *Samuels v. Huff*, 344 F. App'x 8, 12 (5th Cir. 2009) (reversing summary judgment and holding that inmate produced sufficient chronology to create material dispute where he was placed in segregation 10 days after complaining); *Bibbs v. Early*, 541 F.3d 267, 273–74 (5th Cir. 2008) (reversing summary judgment where alleged retaliation occurred one month after complaint and officers commented about plaintiff's grievances).

The Court anticipates that Defendants will tell a very different story. But Brown has said enough at the pleading stage to plausibly infer retaliation, and retaliation violates clearly established law. *See Butts*, 877 F.3d at 589. The motion to dismiss is denied without prejudice as to the retaliation claim. Turner and Banks may pursue their qualified-immunity defense again at the summary-judgment stage if they so choose.

13

B.  General Hood

Brown also sued Mississippi Attorney General Jim Hood in his official capacity for declaratory and injunctive relief.  *See* Compl. [1] ¶ 4.  As to Hood, Brown specifically seeks a declaration that the inmate exception to MTCA is unconstitutional.  For the reasons set forth *supra*, Brown's claim lacks merit.  Nevertheless, Hood raises a threshold question as to the claim against him, seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of standing.  He further says that even if Brown did have standing, the Eleventh Amendment bars Brown's suit.  Def.'s Mem. [19] at 2.  Hood is correct on both points.

1.  Standing

This Court has jurisdiction only if Brown fulfills the standing requirements.  *See Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) ("[T]he first and fundamental question is that of jurisdiction.").  The Supreme Court has articulated three elements the party invoking federal jurisdiction must demonstrate:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotation marks omitted).  Because the Court concludes Brown's allegations fail on the causal-connection requirement, it need not address the others.

To demonstrate causation, the party invoking jurisdiction must show an injury that is traceable to the defendant's alleged conduct.  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).

14

If enforcement of a statute is the alleged injury, "a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Okpalobi*, 244 F.3d at 426.

Brown says that he will suffer injury in the future when the inmate exception is applied to future tort claims he pursues. Assuming that assertion could state a legally cognizable injury for standing purposes—which is a big assumption—Hood's relation to the inmate exception's enforcement is tangential at best. Hood is Mississippi's chief legal officer and is counsel in all suits brought against the State. Miss. Code Ann. § 7-5-39. The Attorney General has the "right to institute, conduct, and maintain all suits necessary for the enforcement of the laws of the state, the preservation of order, and protection of the public rights." *Capitol Stages v. State*, 128 So. 759, 763 (Miss. 1930). Additionally, the Attorney General sits on the State Tort Claims Board along with several other members designated by statute. Miss. Code Ann. § 11-46-18.[3]

Although Hood is the chief legal officer for the State of Mississippi, the denial of Brown's state tort claim is not fairly traceable to him. Hood is only one member on the State Tort Claims Board, which can act only on "the affirmative vote of a majority of those present and voting" at its meetings. Miss. Code Ann. § 11-46-18(3). He does not unilaterally make decisions for the Board. Moreover, the Board does not adjudicate tort claims. *See* Miss. Code Ann. § 11-46-19. Instead, a court would ultimately apply the inmate exception to Brown's

---

[3] The Board is composed of seven members: an appointed State Senator, the Director of the Department of Environmental Quality or a designee, the Commissioner of Insurance or a designee, the Director of the Department of Finance and Administration or a designee, the Attorney General or a designee, the Commissioner of Public Safety or a designee, and the State Treasurer or a designee. The Board's powers are delineated in Mississippi Code section 11-46-19. The Board manages the Tort Claims Fund, hires attorneys to defend the State in tort-claims matters, and pays judgments against the Fund.

anticipated future tort claims. Because Hood is "without any power to enforce the complained-of statute," Brown lacks standing to pursue his claims against Hood. *Okpalobi*, 244 F.3d at 426.[4]

### 2. Eleventh Amendment Immunity

Even if Brown satisfied the standing requirements articulated in *Lujan*, he cannot overcome sovereign immunity. Brown sued Hood in his official capacity as the Attorney General of the State of Mississippi. As with the official-capacity claims against Turner and Banks, the claim against Hood is treated as a claim against the State, which the Eleventh Amendment bars. *See Graham*, 473 U.S. at 166.

*Ex parte Young* does not change that result. Specifically, Hood is not connected to the MTCA by virtue of his position as the chief legal officer of Mississippi or through his position on the State Tort Claims Board. *See Okpalobi*, 244 F.3d at 414–15. Therefore, Brown fails to show the requisite connection between MTCA enforcement and Hood to overcome his Eleventh Amendment immunity, and the *Ex parte Young* exception is inapplicable.

## IV. Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion to Dismiss based on Eleventh Amendment Immunity, State Law Immunity[,] and Qualified Immunity [20] is denied in part as to the retaliation claims against Turner and Banks in their individual capacities; the motion is otherwise granted. Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction [18] is granted, and the claims against Attorney General Jim Hood are dismissed without prejudice.

---

[4] The same is likely true as to Turner and Banks, but they did not raise standing in their brief.

**SO ORDERED AND ADJUDGED** this the 31st day of January, 2018.

                                                    s/ *Daniel P. Jordan III*
                                                    CHIEF UNITED STATES DISTRICT JUDGE