UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LEONARD BROWN                                                        PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:17-CV-50-DPJ-FKB

JIM HOOD, ATTORNEY GENERAL OF THE
STATE OF MISSISSIPPI, ET AL.                                        DEFENDANTS

ORDER

Plaintiff Leonard Brown claims Defendants Marshal Turner and Jacquelyn Banks

retaliated against him for complaining about an assault and denial of medical care.  Turner and

Banks, in their individual capacities, moved for summary judgment [82].  Brown opposes the

motion.  For the reasons explained, the Court finds Defendants' motion should be granted as to

Banks and granted in part and denied in part as to Turner.

I.      Background

In 2015, Brown was incarcerated at the South Mississippi Correctional Institution

("SMCI").  Defendant Turner served as warden of Brown's unit, and Defendant Banks was the

superintendent of the Mississippi Department of Corrections ("MDOC").  On July 24, 2015,

inmates at SMCI stabbed Correctional Officer Zachary Bolton, and Officer Bolton identified

Brown as one of his assailants.  *See* Turner Aff. [82-2] at 3 (Incident Detail).  For his part,

Brown denies any involvement.  Brown Aff. [88] at 2.  This lawsuit stems from three events that

transpired after that attack.

First, Brown says that Correctional Officers Keyes and Lucker—in response to the attack

on Officer Bolton—beat him, sexually assaulted him with a K-9 stick, and placed him in a cold

cell for several days.  Brown Aff. [88] at 3–4.  When he requested medical attention and basic

supplies, prison officials denied his requests. *Id.* at 4. Brown claims that the officers told him

they were following Warden Turner's instructions. *Id.* at 30.

Second, MDOC placed Brown in Administrative Segregation, during and after the

investigation of the attack on Officer Bolton. Banks Aff. [82-1] at 3–4. According to Brown,

officers repeatedly threatened to kill him during this period "for complaining to prison officials

about being sexually assaulted." Brown Aff. [88] at 3. Brown therefore reached out to

Defendant Banks in August 2015. He wrote that he "did not feel safe at SMCI" and requested

"to be transferred to another correctional facility away from the corrections officers who were

torturing and threatening [him]." *Id.* at 6. Brown says Banks failed to respond. *Id.*

Third, MDOC issued a Rule Violation Report ("RVR") to Brown finding he participated

in the attack on Officer Bolton. Brown Aff. [88] at 5; *see* Banks Aff. [82-1] at 7 (attaching RVR

finding Brown assaulted Officer Bolton). Brown appealed, and the appeal was rejected by

Warden Turner. Brown Aff. [88] at 5.[1]

In response, Brown filed this lawsuit against Mississippi Attorney General Jim Hood,

Warden Turner, Superintendent Banks, Officer Lucker, Officer Davis, Officer Keys, and Captain

Johnson. Brown alleged Defendants violated his rights under the First, Fourth, Eighth, and

Fourteenth Amendments to the United States Constitution and also violated state law.

The disposition of those claims is a little complicated and begins on January 31, 2018.

On that day, the Court dismissed the official-capacity and state-law claims against Warden

Turner and Superintendent Banks, as well as the claims against Attorney General Hood. Order

[51]. The Court also found Warden Tuner was entitled to qualified immunity on Brown's Eighth

---

[1] MDOC issued a second RVR to Brown around the same time period that he also appealed, but there is not a legible copy of this RVR in the record. Turner Aff. [82-2] at 8 (illegible RVR).

Amendment delay-in-medical-care claim. *Id.* at 11. Based on Brown's limited response to Defendants' motion to dismiss, the Court concluded that he had waived the following claims: "(1) Fourth Amendment unlawful arrest claim; (2) claims related to the cold and uncomfortable cell; (3) failure to protect; (4) denial of ARP request; and (5) First Amendment." *Id.* at 9 n.2.

On July 25, 2018, the Court dismissed Brown's claims against Officer Keys in his official and individual capacities but granted Brown an opportunity to seek leave to amend. Order [57]. Brown declined to do so. Then on December 6, 2018, the Court granted Brown's motion for default judgment against Officer Lucker, in his individual capacity, "on the issue of liability alone." Order [72] at 1 (quoting Pl.'s Mot. [66] at 4). As to Officer Davis, Defendants filed a suggestion of death [70] on November 14, 2018. Finally, it does not appear that Brown ever served Captain Johnson. Unexecuted Summons [7] (noting Johnson no longer works for MDOC); Third Mot. for Extension of Time to Serve Process [44] (filed Oct. 23, 2017) (seeking additional time to serve Johnson).

That leaves Brown's claim that Warden Turner and Superintendent Banks retaliated against him for complaining about the sexual assault and the lack of medical care. The Court previously denied Defendants' motion to dismiss that claim under Rule 12(b)(6) but noted that they could raise the issue again at the summary-judgment stage. Order [51] at 13. Turner and Banks have done just that; their motion is fully briefed; and the Court has subject-matter jurisdiction.

II.     Standards

        A.     Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is

entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

B.      Qualified Immunity

Turner and Banks assert qualified immunity as to Brown's retaliation claims against them in their individual capacities. As the Fifth Circuit recently summarized:

> [T]he doctrine of qualified immunity protects government officials from civil
> damages liability when their actions could reasonably have been believed to be
> legal. This immunity protects all but the plainly incompetent or those who
> knowingly violate the law. Accordingly, we do not deny immunity unless
> existing precedent must have placed the statutory or constitutional question
> beyond debate. The basic steps of this court's qualified-immunity inquiry are

4

well-known:  a plaintiff seeking to defeat qualified immunity must show:  (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

*Anderson v. Valdez*, 845 F.3d 580, 599–600 (5th Cir. 2016) (citation and quotation marks omitted, punctuation altered).

Courts use a two-step analysis to determine whether qualified immunity applies.  "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'"  *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).  And "[w]hen a defendant raises qualified immunity, the burden is on the plaintiff to 'demonstrate the inapplicability of the defense.'"  *Coleman v. Marion Cty.*, No. 2:14-CV-185-DPJ-FKB, 2015 WL 5098524, at *6 (S.D. Miss. Aug. 31, 2015) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

III.    Analysis

At the outset, the Court notes that Brown appears to rehash previously dismissed claims in his response to Defendants' motion.  *See* Pl.'s Resp. [89] at 9–11.  For example, he insists Warden Turner subjected him to cold conditions "in conscious disregard of the risk of serious bodily harm" and denied him medical treatment.  *Id.* at 10–11.  To support his arguments, Brown now provides factual details allegedly linking Warden Turner to those asserted deprivations.  *See* Brown Aff. [8] at 3.  But Brown neither pleaded those facts in his Complaint nor sought leave to

add them in an amended Complaint. As it stands, the Court has already dismissed all claims

against Warden Turner and Superintendent Banks, other than the retaliation claim.

A.    Retaliation

Generally speaking, "[f]iling grievances and otherwise complaining about the conduct of

correctional officers through proper channels are constitutionally protected activities, and prison

officials may not retaliate against inmates for engaging in such protected activities." *Butts v.*

*Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (quoting *Reese v. Skinner*, 322 F. App'x 381, 383 (5th

Cir. 2009)) (internal quotation marks omitted). But "'[t]he prospect of endless claims of

retaliation on the part of inmates would disrupt prison officials in the discharge of their most

basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts

embroil themselves in every disciplinary act that occurs in state penal institutions.'" *Woods v.*

*Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir.

1994)).

"To establish retaliation, a prisoner must show '(1) a specific constitutional right, (2) the

defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a

retaliatory adverse act, and (4) causation.'" *Joseph v. Dykes*, 368 F. App'x 511, 513 (5th Cir.

2010) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). Causation requires a

showing that "'but for the retaliatory motive'" the incident would not have occurred. *McDonald*,

132 F.3d at 231 (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)).

Here, Brown insists he exercised his

> First Amendment right by speaking out about being subjected to freezing
> temperatures, not being provided medical treatment for the serious injuries he
> suffered as a result of the sexual assault by a guard, reporting the abuse and
> threats on his life by prison guards, and requesting to be transferred to another
> facility.

Pl.'s Resp. [89] at 12. As for the way Defendants allegedly retaliated, Brown says,

Warden Turner retaliated against him by not providing medical treatment, ordering that he be placed in a cold freezing cell without a blanket or clothes, and summarily denying his RVRs. Superintendent Banks retaliated against him by not transferring the corrections officers who threatened him and by not transferring him to another prison.

*Id.*

B.      Warden Turner

The first qualified-immunity question is whether Brown has established a constitutional violation. To begin, some of the retaliation Brown alleges occurred before he complained; for example, being placed in the cold cell. Pre-speech conduct is not retaliatory. *See, e.g.*, *Watkins v. Tex. Dep't of Crim. Justice*, 269 F. App'x 457, 461 (5th Cir. 2008) (noting—in employment context—that actions that predate participation in any protected activity are not retaliatory).

The timing of the remaining conduct is not entirely clear. Nevertheless, the Court must read the record in the light most favorable to Brown. And in that light, he seems to say that Warden Turner kept him in unconstitutionally harsh conditions because Brown complained about the sexual assault and the conditions themselves. Being left in extreme cold without clothing, a blanket, or post-sexual-assault medical care could constitute cruel and unusual punishment if proven. *See Bibbs v. Early*, 541 F.3d 267, 271–72 (5th Cir. 2008) ("[W]e are persuaded that Bibbs has raised a cognizable claim of retaliation by alleging and providing supporting evidence that he exercised his First Amendment rights and was then subjected to below-freezing temperatures for more than four hours during each of four consecutive nights—a measure of retaliation."); *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (subjecting prisoner to cold without protection of jackets or blankets "may have risen to the level of a constitutional deprivation") (collecting cases). The motion therefore turns on whether Warden Turner intended to retaliate for the complaints and would not have so treated Brown but for

7

them.  In other words, but for Brown's complaints, would the Warden have left Brown in those conditions anyway.

As noted, Brown must show that his complaint was the "but for" cause of alleged retaliation.  That said, "'but-for cause' does not mean 'sole cause.'"  *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (citation omitted).  And here, Brown makes two sworn statements that speak to intent and causation.  First, he states that while in the cold cell, he complained about the conditions and the lack of medical care following the alleged sexual assault but was informed that Warden Turner had instructed the guards "not to give [Brown] anything."  Brown Aff. [88] at 4.  Second, he states that after he was moved, officers repeatedly came by his cell threatening to "physically beat . . . and kill [Brown] for complaining to prison officials about being sexually assaulted . . . and physically assaulted."  *Id.*

While Brown never argues that the subsequent visits constitute retaliation, they would evince Warden Turner's alleged intent to retaliate against Brown for complaining to "officials" about the conditions and the alleged sexual assault.  *Id.*  Whether Warden Turner actually left Brown in such conditions longer than he would have but for the complaints presents a question of fact for the jury.  *See Bibbs*, 541 F.3d at 272 (finding prisoner had "at minimum raised a question of material fact on his retaliation claim"); *see also Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) ("Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Turning to the RVRs, Brown claims Warden Turner retaliated against him by denying his appeal; that claim fails for lack of causation.  Warden Turner possessed information that Officer Bolton identified Brown as his assailant and therefore affirmed the RVR finding that he

8

participated in the attack. Turner Aff. [82-2] at 2. Moreover, "an inmate has no constitutional

right to have incidents at the prison investigated or resolved in the manner that he desires." *Ware

v. Tanner*, No. 12-2250, 2013 WL 5589506, at *5 (E.D. La. Oct. 10, 2013) (citing *Geiger v.

Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (stating there is no right for prisoners to have

complaints resolved to their satisfaction)).

Having found a fact question on whether Warden Turner retaliated against Brown, the

Court finds that the law was clearly established at the time of the alleged acts. *See Bibbs*, 541

F.3d at 272; *Palmer*, 193 F.3d at 353.

In sum, Warden Turner's summary-judgment motion on the retaliation claim is granted

as to the RVRs and any conduct allegedly occurring before Brown complained. It is otherwise

denied.

C.      Superintendent Banks

Turning next to Superintendent Banks, Brown says he exercised his First Amendment

rights by requesting to be transferred to another facility and Banks retaliated by denying that

request. Pl.'s Resp. [89] at 12. In her motion, Banks insists that Brown's classification and

housing assignment were correct based on the circumstances and he cannot demonstrate an intent

to retaliate. Defs.' Mem. [83] at 12–13.[2]

Initially, MDOC assigned Brown a "medium" classification. Banks Aff. [82-1] at 3.

But in 2014, following incidents at Walnut Grove Correctional Facility ("Walnut Grove"),

---

[2] Banks also argues that Brown cannot show his housing assignment qualifies as an adverse
retaliatory act, such that an inmate would be deterred from exercising his constitutional rights.
*Id.* at 12–13 (citing *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006)). But the Fifth Circuit
has recognized that transfer to a "more dangerous section" of a prison is a sufficiently adverse
retaliatory act. *Morris*, 449 F.3d at 686 (noting *de minimis* standard). The record here is scant
on the conditions in Administrative Segregation relative to the rest of the facility, so the Court
declines to pursue this argument.

MDOC changed his classification to "close" and transferred him to SMCI. *Id.* After the attack on Officer Bolton, MDOC placed Brown in Administrative Segregation "pending an investigation into the assault." *Id.* at 4. Once MDOC concluded Brown was involved, he remained in Administrative Segregation "pending reclassification as a result of his role in the assault." *Id.* MDOC returned Brown to "medium" classification on May 19, 2017. *Id.* at 6 (MDOC Classification History).

As for Brown's complaints, Superintendent Banks confirmed that she received a letter from Brown on August 21, 2015, claiming that he did not feel safe. *Id.* at 4. She responded by writing, "You are appropriately housed. Your life is not in danger. Transfer is denied." *Id.*; *see id.* at 16 (Brown Letter to Banks). Banks denies retaliating against Brown by manipulating his housing assignment and confirms that Brown's "close custody" status and his placement in administrative segregation were based on his history at Walnut Grove and his involvement in the attack on Officer Bolton. *Id.* at 4–5; *see McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) ("Classification of prisoners is a matter left to the discretion of prison officials.").

On this record, Banks says there is no evidence to suggest that "but for" a retaliatory motive Brown would have been transferred out of SMCI. Defs.' Mem. [83] at 13; *see McDonald*, 132 F.3d at 231. The Court agrees. At best, Brown says Superintendent Banks failed to adequately investigate his request for transfer. Brown Decl. [88] at 6–7; *see Ware*, 2013 WL 5589506, at *5 (noting inmate did not have a "constitutional right to have incidents at the prison investigated or resolved in the manner that he desires"). But he has not directed the Court to evidence that Superintendent Banks refused that request because Brown made it. In other words, Brown fails to show that but for asking Banks to transfer him she would have done so. *See Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988) (affirming summary judgment

where prison official explained that plaintiff was moved because he "was verbally abusing prison officials and was disrupting meal schedules"); *see also Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (finding plaintiff "failed to 'establish that but for the retaliatory motive,' his property would not have been seized") (quoting *Woods*, 60 F.3d at 1166).

Unlike the claim against Warden Turner, the record evidence regarding Superintendent Banks—when viewed in the light most favorable to Brown—fails to demonstrate a triable question of fact on intent or causation. The motion for summary judgment is therefore granted as to her.

V.      Conclusion

The Court has considered all arguments; those not addressed would not have changed the outcome. For the reasons stated, Defendants' motion for summary judgment [82] is granted as to Superintendent Banks; granted as to Warden Turner regarding alleged acts before Brown complained and related to the RVR appeal; and otherwise denied as to Warden Turner.

Brown is instructed to show cause within ten days why his claim against Defendant Captain Johnson should not be dismissed under Federal Rule of Civil Procedure 4(m) for failure to perfect service of process.

Finally, the parties are directed to contact the magistrate judge to set this matter for a settlement conference.[3]

**SO ORDERED AND ADJUDGED** this the 29th day of October, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Once the settlement conference is scheduled, the Court will reset the pretrial conference and place the case on the trial calendar.